UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

Jul 8   1 38 PM '04

U.S. DISTRICT COURT
NEW HAVEN, CONN.

FRANK RICCI, MICHAEL BLATCHLEY,
GREG BOIVIN, GARY CARBONE,
MICHAEL CHRISTOFORO, RYAN DIVITO,
STEVEN DURAND, WILLIAM
GAMBARDELLA, BRIAN JOOSS,  JAMES
KOTTAGE, MATTHEW MARCARELLI,
THOMAS J. MICHAELS,  SEAN PATTON,
CHRISTOPHER PARKER, EDWARD
RIORDON, KEVIN ROXBEE, TIMOTHY
SCANLON, BENJAMIN VARGAS,
JOHN VENDETTO AND MARK
VENDETTO

CIVIL NO.

**3 0 4 C V 0 1 1 0 9** (JCH)

Plaintiffs,

July 8, 2004

V.

JOHN DESTEFANO, KAREN DUBOIS-
WALTON, THOMAS UDE, JR., TINA
BURGETT, BOISE KIMBER, MALCOLM
WEBER, ZELMA TIRADO AND THE CITY
OF  NEW HAVEN,

Defendants.

## **COMPLAINT**

1.     This civil action is brought to redress the deprivation by defendants of rights

secured to the plaintiffs by the Constitution and laws of the United States and the

Constitution and laws of the State of Connecticut.  The plaintiffs, all firefighters employed

by the City of New Haven, have been unlawfully denied promotions and opportunities for

promotions on account of their race and political association.

1

2.      This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1333.   The plaintiffs further invoke the supplemental jurisdiction of this Court with respect to those causes of action arising under the laws of the State of Connecticut.

3.      At all times relevant to this complaint, the defendant John DeStefano was and remains the Mayor of the City of New Haven and was acting under color or pretense of law, to wit: under the Charter, regulations, customs and usages of the City of New Haven.  In his said capacity, the defendant DeStefano has chief executive authority over the affairs of the City of New Haven, the employment of municipal personnel and enforcement of the City Charter and rules and regulations of the City's various boards and commissions.

4.      At all times relevant to this complaint, the defendant Karen Dubois-Walton was the Chief Administrative Officer of the City of New Haven.  In said capacity, the defendant had overall administrative responsibility and authority with respect to the affairs of the City of New Haven, the conduct of all subordinate city officials,  the enforcement of the City's charter and rules and regulations of the City's various boards and commissions. At all times relevant to this complaint, the said defendant was acting under color or pretense of law, to wit: under the Charter, regulations, customs and usages of the City of New Haven. The defendant Dubois-Walton is a political appointee of the Mayor, reports directly to the defendant DeStefano and acts as a political operative for the Mayor by carrying out the Mayor's policies, political agenda and municipal policies.

2

5.     At all times relevant to this action, the defendant Thomas W. Ude, Jr., was and remains the Corporation Counsel for the City of New Haven and in said capacity was acting under color or pretense of law, to wit:  under the Charter, regulations, customs and usages of the City of New Haven.

6.     The defendant Ude is a political appointee and was appointed to his position by the defendant DeStefano.  In his position as Corporation Counsel, defendant Ude has overall responsibility for the management of the City's legal office, the representation of the City in all legal matters and the further responsibility of ensuring, along with the other defendants, that the City and its officials obey the provisions of the City's Charter and the rules and regulations of its various boards and commissions.  By provision of the charter, the defendant Ude reports directly to the Mayor, advances the Mayor's position on various legal matters and further acts as a political operative for the Mayor by carrying out the Mayor's policies and political agenda.

7.     At all times relevant to this action, the defendant Tina Burgett was the Director of Personnel for the City of New Haven and in said capacity was acting under color or pretense of law, to wit:  under the Charter, regulations, customs and usages of the City of New Haven.  The defendant Burgett  reports to the defendants DeStefano and DuBois-Walton and carries out the policies and decisions of the Mayor with respect to matters of municipal employment.  Defendant Burgett is further responsible for enforcing the provisions of the City Charter and applicable civil service regulations with respect to hiring and promotion of municipal employees in the City's classified civil service.

3

8.      At all times relevant to this complaint, the defendants Malcolm Weber and Zelma Tirado were members of the Civil Service Board of the City of New Haven and in said capacity were acting under color or pretense of law, to wit: under the Charter, regulations, customs and usages of the City of New Haven. The Civil Service Board of the City of New Haven (hereinafter "Board") was established by authority of the City Charter and is comprised of five members, all of whom are appointed by the Mayor of the City of New Haven. The Board is responsible for carrying out and enforcing the provisions of the City Charter respecting the hiring and promotions of individuals in the City's classified service.

9.      At all times relevant to this action, the defendant Boise Kimber was a member of the Board of Fire Commissioners of the City of New Haven and in said capacity was acting under color or pretense of law, to wit: under the Charter, regulations, customs and usages of the City of New Haven.   The defendant Kimber is a political appointee of the defendant DeStefano and was chosen by the Mayor to serve as Chairman and later Commissioner of the City's Board of Fire Commissioners. In said capacity, the defendant Kimber has supervisory and administrative control and authority over the affairs of the Fire Department of the City of New Haven, firefighters and other personnel employed by the Department of Fire Services.

10.     At all times relevant to this complaint, the defendant City of New Haven (hereinafter "City") was a municipal corporation duly organized and existing under the laws and Constitution of the State of Connecticut.  The City was and is the employer of the

4

plaintiffs and liable for the acts and omissions of its officials, representatives, agents and administrators.

11.     The acts and omissions of the defendants and each of them as complained of herein were committed under the guise and pretense of municipal authority and pursuant to official practices, customs and policies of the City which are designed and operate to discriminate against municipal employees on the basis of race and political affiliation.

12.     The plaintiffs are employees of the City and members of the City's classified civil service. All of the plaintiffs are employed as firefighters in the Department of Fire Service. The plaintiff Benjamin Vargas is Hispanic. All of the other plaintiffs are white. The majority of the plaintiffs live outside the boundaries of the City, are not members of the defendant DeStefano's political constituency and are not a source of political support for him.

13.     The City of New Haven is governed by a charter the provisions of which are established and approved by the voters of the City of New Haven in an exercise of democratic will. The Charter has the force of law and all elected and appointed officials and agents of the City are mandated to respect and carry out its provisions. In particular, the Charter charges the Mayor with the duty of causing all laws and ordinances to be executed and enforced. The Mayor is further responsible for the good order and efficient government of the city.

14.     The Charter provides for the establishment of a classified civil service and all positions in city government within the classified service are subject to the various charter

5

provisions and Civil Service Board rules respecting the hiring and promotion of individuals in the classified service. The position of firefighter falls within the classified service.

15.     To avoid to the greatest extent possible the ills of the old spoils system, to wit: invidious discrimination, nepotism, cronyism, political horse-trading, graft and bribery, the Charter provides for a strictly merit-based system for the promotion of municipal employees in the classified service.

16.     Article XXX, §167 of the Charter provides that all promotions in the classified service shall be made according to merit and fitness to be ascertained so far as practicable by competitive examination.

17.     Article XXX, §172 of the Charter expressly mandates that no person in the classified service shall be appointed,  promoted or in any way favored or discriminated against because of race, sex, age, national origin, or political or religious opinion or affiliation. The said section further provides that no person shall willfully or corruptly make any false statement, certificate, mark, rating or report in regard to any test, certification, promotion, reduction, removal or appointment held or made under the provisions of the charter or in any manner commit or attempt to commit any fraud preventing the impartial execution of the rules and regulations respecting the merit-based examination process.

18.     The Charter further expressly provides that no person shall either directly or indirectly pay, render or give any money, service or any valuable thing to any person, for or on account of or in connection with any test, appointment, or promotion. A violation of this provision constitutes a criminal offense punishable by fine and imprisonment.

LAW OFFICES OF KAREN LEE TORRE • 51 ELM STREET, SUITE 307, NEW HAVEN, CONNECTICUT 06510 • TEL: (203) 865-5541

19.     Article XXX, §166 of the Charter charges the Personnel Director of the City with the duties of preparing, conducting and scoring examinations of qualified applicants for all positions in the classified service and certifying the results of such examinations to the members of the Civil Service Board. The Personnel Director is further required to determine the eligibility of applicants for all positions in accordance with the Charter and rules established by the Civil Service Board and to maintain records of all applicants, their qualifications and scores.

20.     Consistent with establishment of a merit-based system of hiring and promotion, Article XXX, §160 of the Charter, as well as the rules and regulations of the Board, provide that no promotion within the classified service shall be made except from among those applicants with the three highest scores of those who shall have passed a competitive examination with a score of at least seventy percentum and are upon the eligible list established by the Director of Personnel and the Board. This requirement is commonly known and referred to as the "Rule of Three".

21.     For some ten years, the City of New Haven, acting through its officials, among them the defendants herein, engaged in a pattern of repeated violations of the Rule of Three for the improper and unlawful purpose of engaging in race-based discrimination and political favoritism in the appointment and promotion of individuals in the classified service. As a result of its repeated and persistent lawbreaking, the City and various of its officials were named defendants in several civil actions brought in the Superior Court for the Judicial

7

District of New Haven by municipal employees who were victims of the City's violations of its Charter.

22.     In each case where the City's practice of violating the Rule of Three was challenged, the plaintiffs in all such civil actions prevailed in their efforts to seek temporary and permanent injunctive relief against such illegal practices.  The defendants herein, intent on persisting in the illegalities complained of in this action, proceeded boldly and brazenly to ignore the opinions and orders of the judges of the Superior Court for the Judicial District of New Haven.  In consequence certain plaintiffs sought and gained a permanent injunction and final judgment against the City enjoining the City from further violations of the Rule of Three.

23.     For the purpose of filling vacancies in the promotional ranks of its fire department, the City, in accordance with the Charter, administered competitive examinations for promotions to the ranks of lieutenant and captain.

24.     The plaintiffs Gary Carbone, William Gambardella,  Brian Jooss, James Kottage, Matthew W. Marcarelli, Thomas J. Michaels, Edward Reardon, Kenneth Roxbee, Timothy Scanlon, Benjamin Vargas and John Vendetto competed in the examination process for promotion to the rank of captain.  The plaintiffs Frank Ricci, Michael Blatchley, Greg Boivin, Michael Christoforo, Ryan DeVito, Steven Durand, Sean Patton, Christopher Parker and Mark Vendetto competed in the examination process for promotion to the rank of lieutenant.

LAW OFFICES OF KAREN LEE TORRE • 51 ELM STREET, SUITE 307, NEW HAVEN, CONNECTICUT 06510 • TEL: (203) 865-5541

25.     The plaintiffs expended money and time in preparation for the examinations. They gave up much of their leisure time and time with family and friends in order to study for the examinations.

26.     The competitive examination consisted of two components, a written examination and an oral examination.  With respect to the position of lieutenant, a written examination was administered on or about November 22, 2003 and an oral examination was administered on or about December 13, 2003 to all those eligible to compete.  With respect to the position of captain, a competitive written examination was administered on or about November 21, 2003 with the oral examination administered on or about December 14, 2003 to all those eligible to compete.  With respect to all of these examinations, the City contracted with and engaged the services of a professional corporation which employs personnel possessed of expertise in the field of formulation and administration of competitive civil service employment examinations.  The City expended the approximate sum of $100,000.00 in payment of professional fees for such purpose and the examinations were prepared upon input of city officials and fire department personnel.  The form and content of the examinations were approved by the defendants, who determined that the examinations were appropriately related to the knowledge, skills and abilities necessary to competent performance of the duties of both positions.

27.     Consistent with the Charter's mandate that promotions be based upon merit and without regard to race or other improper factors, applicants participating in the examination process were assigned an identification number and no other characteristics of

9

an examinee, including his/her race, age, gender or ethnicity, were made available or known to the test administrators.  On or about January 22, 2004, the scores achieved by all examinees were reported to the defendants by reference to the identification number of each examinee.

28.     Upon information and belief the defendant Burgett, together with the City's Chief Examiner, Noelia Marcano, upon receipt of the scores from the test administrators, proceeded to peruse through personnel files and other city documents for the purposes of ascertaining the race and ethnicity of each applicant and labeling each applicant in accordance with what they believed or suspected to be his/her race and ethnicity.  The defendant thereafter compiled another list of examinees identified only by assigned number which indicated each individual's score and his/her race as perceived by defendants.

29.     The aforesaid list was published and circulated among city officials.  Upon review of the list, with its labeling of candidates on the basis of race, the defendants alleged that white firefighters were the top scorers in both competitive examinations.

30.     The defendants herein,  having been enjoined by a judge of the Connecticut Superior Court from further violations of the City Charter and the  Rule of Three,  were obligated by court order to promote employees in strict accordance with the Charter.  With respect to the promotional examinations for the ranks of captain and lieutenant, compliance with the law and the Charter would have required the promotion of the plaintiffs and/or consideration of  them for  promotion under  the Rule of Three without regard to race, ethnicity or political opinion or affiliation.

10

31.     Compliance with the Charter, and thus promotion of those deemed most fit based on merit, would have resulted in white and Hispanic firefighters being promoted first given the number of then-existing vacancies in the promotional ranks. The defendants thus embarked on a course of conduct designed to avoid and/or evade compliance with their legal obligations. The defendants and each of them collaborated and conspired with one another to cause the City to discard the examination results and fail and refuse to establish an eligible list for promotion to the ranks of captain and lieutenant.

32.     The defendant DeStefano was subjected to pressure and lobbying by leaders of New Haven's African-American community including, but not limited to, defendant Boise Kimber and certain minority members of the City's Board of Aldermen.

33.     The defendant Kimber is an African-American and a minister who leads a large congregation in the City of New Haven comprised largely of African-Americans. The defendant Kimber has long been active in Democratic Party politics and is a political ally and operative for the defendant DeStefano. The defendant DeStefano values his relationship with the defendant Kimber who has used his influence as a minister and civic leader to swing support and blocs of votes in favor of defendant DeStefano in his successful mayoral electoral campaigns. The defendant Kimber, angered that white firefighters would be promoted, proclaimed that the Civil Service Board would certify the test results "over [his] dead body" and proceeded to pressure the Mayor and lobby members of the Civil Service Board with the aim of provoking the Board to violate the Charter and refuse to proceed with promotions based on merit.

11

34.     The defendant DeStefano not only has an interest in re-election to the office of Mayor but has disclosed publically his ambition to be elected Governor of the State of Connecticut. The defendant DeStefano feared that the City's compliance with the Charter and the promotion of firefighters based on merit and without regard to race and political association would engender the anger and retribution of leaders of the African-American community in New Haven and thus jeopardize his political standing and ambition. Defendant DeStefano feared that promotions in the fire department in accordance with the law and free from race-based discrimination and political influence-peddling would result in a withdrawal of political support by the defendant Kimber and other leaders of the African-American community in New Haven.

35.     Well aware that his intended course of action was unlawful and wishing to appear neutral and uninvolved, the defendant DeStefano delegated to the other individual defendants, in particular defendants Dubois-Walton and Ude, the task of causing the City to engage in the acts and omissions complained of.  Defendant DeStefano knew that his authority and influence, exerted surreptitiously and through his political appointees and subordinates, would achieve the desired result.

36.     As part of their plan to evade compliance with the Charter and violate the rights of the plaintiffs by denying them justly earned promotions, the defendants first attempted to concoct a pretext under which they could deny promotions to the plaintiffs by discarding  the examination results for a seemingly legitimate reason.  Toward this end, defendants attempted unsuccessfully to solicit evidence of irregularities and/or cheating

12

during the examination process.  No evidence whatever existed, however, to support such a claim and the defendants thereafter sought to concoct other seemingly valid reasons to discard the test results, among them a suggestion that one or more minority firefighters who competed in the examinations was deprived of access to necessary information and/or study materials pertinent to the test by the act or failure of a city official or agent.  When the defendants understood that such claim was likewise invalid, defendants resorted to behind-the-scenes lobbying and exertion of political pressure on the members of the Civil Service Board for the purpose of influencing the Board to engage in the unlawful acts complained of.

37.     The defendant Ude, at the direction and with the approval of Defendant DeStefano, proceeded to collaborate with defendants Burgett and Dubois-Walton to influence and provoke the Civil Service Board to violate the Charter,  the state and federal constitutions, and state and federal law prohibiting race discrimination in employment and adverse employment actions on account of political expression and affiliation.

38.     The defendant Ude made public remarks to the Board and the broadcast and print media which were designed to intimidate and influence the politically appointed members of the Civil Service Board, comments that were insulting and inflammatory and designed to make Board members afraid to discharge their legal obligation  under fear of being labeled by City officials and others as "bigots".

39.     The defendants Ude, Dubois-Walton and Burgett, acting at the direction of the Mayor and pursuant to the Mayor's policy, further proceeded to communicate and

13

conspire to devise a strategy to produce the results desired by the Mayor which was a refusal by the Board to carry out its duty to establish an eligible list and permit promotions to be made. Through e-mail communications and surreptitious meetings, the defendants Ude, Dubois-Walton and Burgett conspired and acted to cause the City to refuse to establish an eligible list and thus prevent the plaintiffs from receiving promotions to which they were lawfully entitled. Defendants acted covertly in a manner designed to disguise the fact that the defendant DeStefano had dictated such course of action with the unlawful aims of discriminating against employees on the basis of race and rewarding with promotions those firefighters who are constituents of African-American leaders, friends or relatives of the Mayor's political supporters and contributors, and friends or relatives of certain members of the City's Board of Aldermen.

40.    Defendants thereafter engaged the services of several professionals and/or academics for the alleged purpose of reviewing the examinations and offering an opinion as to their fairness. The defendant Burgett attempted improperly to influence these professionals in advance of their formulation of an opinion by providing them with selected media reports and publications which she hoped would persuade the professionals to offer an opinion upon which the City may justify a refusal to certify the examination results. To the defendants' disappointment, however, none of these individuals offered an opinion that the examinations were not pertinent to the duties and responsibilities of the promotional positions or were otherwise unfair. The defendants also arranged for the personal appearance before the Civil Service Board of a representative of the firm which devised and

14

administered the examinations who, in an extensive presentation to the Board, assured board members that the subject matter and content of the examinations were appropriate and the testing process fair to all who competed.

41.     Despite all of the above facts, on or about March 18, 2004, the defendants, acting through the members of the Civil Service Board, opted to discard the examination results and refuse to establish an eligible list. As a result, none of the plaintiffs will be promoted or considered for promotion.

42.     On diverse dates from January 22, 2004 until the date of the commencement of this action, the plaintiffs demanded disclosure of their individual scores for the purpose of determining their relative positions and ranks on the eligible list required by the Charter and the rules of the Board. Believing that their civil and constitutional rights were violated by the defendants, each plaintiff further wished to determine his standing to commence an administrative proceeding and/or civil action to redress his injuries.

43.     The defendants were aware that those whose rights were violated and who suffered injury on account of defendants' unlawful acts would possess and may pursue causes of action as to which applicable statutes of limitation would require the plaintiffs to act promptly or suffer foreclosure of their rights.

44.     The defendants aimed to thwart any scrutiny of their conduct in relation to the examination scores. Defendants further aimed to keep the plaintiffs in a state of uncertainty and confusion regarding their performance in the examinations and the extent to which their rights were violated by defendants. With ill motive, defendants conspired unlawfully to deny

15

plaintiffs access to information regarding their scores with the foreknowledge that said conduct would impede plaintiffs' ability to ascertain their rights and commence an administrative or civil proceeding to vindicate such rights.

45.      Although the Charter, Civil Service Board rules and City policies allowed for the right of the plaintiffs to disclosure of their scores and despite the fact that the city and its officials had previously been admonished by state authorities for unlawfully refusing employees access to their examination scores, the defendants maliciously deprived and continue to deprive the plaintiffs of this information for the purpose of causing the plaintiffs to suffer distress and for the further unlawful purpose of frustrating and impeding plaintiffs' access to the agencies and courts of the State of Connecticut for redress of their injuries.

46.      Each of the plaintiffs had an absolute right protected by the First Amendment to the United States Constitution and by article first, section 4 of the Constitution of the State of Connecticut to choose not to be a political supporter of the defendant DeStefano, to refrain from activities on behalf of the Democratic Party in New Haven and to refrain from association with those whose manage and support the defendant DeStefano's campaigns for political office.

47.      Each of the plaintiffs have the right under the Charter of the City of New Haven to promotion, opportunities and consideration for promotion on the basis of merit and free from favoritism and discrimination on the basis of their race, ethnicity or political association or affiliation.

16

48.     By the acts and omissions of the defendants as complained of herein, the plaintiffs were deprived of their right to equal protection of the laws and equal privileges as guaranteed by the Fourteenth Amendment to the United States Constitution.

49.     By the acts and omissions of the defendants as aforedescribed, the plaintiffs and each of them were deprived of their property interests without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

50.     By the acts and omissions aforedescribed, the defendants violated the plaintiffs' rights to freedom of speech as guaranteed by the First Amendment to the United States Constitution.

51.     By the acts and omissions aforedescribed, the defendants violated the plaintiffs' rights to freedom of association as guaranteed by the First Amendment to the United States Constitution.

52.     By the acts and omissions aforedescribed, the defendants violated the plaintiffs' rights to freedom of expression as guaranteed by article first, section 4 of the Constitution of the State of Connecticut.

53.     Each of the acts and omissions of the defendants as aforedescribed constituted intentional, extreme and outrageous conduct which defendants knew was likely to cause the plaintiffs to suffer severe emotional distress. As a direct and proximate result of defendants' tortious conduct, the plaintiffs and each of them suffered severe emotional distress.

54.     At all times relevant to this complaint, the defendants and each of them acted willfully and intentionally and/or with reckless disregard of whether their conduct violated

17

the plaintiffs' civil and constitutional rights.

55.     In the manner aforedescribed, the defendants and each of them violated the provisions of 42 U.S.C. Section 1983 to the injury of the plaintiffs.

56.     The defendants conspired with one another to violate the civil and constitutional rights of the plaintiffs and in so doing violated the provisions of 42 U.S.C. Sections 1983 and 1985 to the injury of the plaintiffs.

57.     At all times relevant to this complaint, each defendant had the duty to intervene and prevent another defendant from engaging in the unlawful acts and omissions complained of herein.  Each defendant failed to discharge this duty to the injury of the plaintiffs.

58.     The aforedescribed acts and omissions of the defendants were committed pursuant to and as a part of an official policy, custom and practice established by the City of New Haven with the purpose and effect of depriving the plaintiffs and others similarly situated the aforesaid civil and constitutional rights on the unlawful bases of race, ethnicity, expression, association and political affiliation.  As a direct and proximate result of the official policy and practices of the City of New Haven as complained of herein, the plaintiffs and each of them have suffered injury.

59.     As a direct and proximate result of the acts and omissions of the defendants as aforedescribed the plaintiffs suffered the following injuries, including, but not limited to:

a.      Denial of promotion;

b.      Denial of fair consideration for promotion;

18

c.   Denial of opportunities for promotion;

d.   Loss of income, pension accruals and other benefits attendant to promotion;

e.   Loss of money and time expended in connection with preparation for and participation in the examinations;

f.   Inconvenience, annoyance, burden and time away from family and leisure activities associated with unsuccessful efforts to secure defendants' compliance with the law and their right to disclosure of their examination scores;

g.   Damage to their careers and standing in their profession;

h.   Impeded and foreclosed opportunities for further promotion to higher ranks of the New Haven Fire Department;

i.   Severe emotional distress, anxiety and upset;

j.   Other intangible injuries associated with the violation of their civil and constitutional rights.

*Wherefore,* the plaintiffs demand judgment against the defendants and each of them and further relief as follows:

a.   Compensatory damages in an amount which a jury shall determine to be just and reasonable;

b.   Punitive damages in an amount which a jury shall determine to be just and reasonable;

19

c.      Reasonable counsel fees and the costs of this action;

d.      Pre-judgment and post-judgment interest as allowed by law; and

e.      Such further relief as law and equity may afford.

THE PLAINTIFFS,


BY: _____
        Karen Lee Torre
        Fed. Bar No. ct01701
        Law Offices of Karen Lee Torre
        51 Elm Street, Suite 307
        New Haven, Connecticut 06510
        Tel. (203) 865-5541
        Fax: (203) 865-4844

        Their Attorney

20

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FRANK RICCI, MICHAEL BLATCHLEY,
GREG BOIVIN, GARY CARBONE,
MICHAEL CHRISTOFORO, RYAN DIVITO,
STEVEN DURAND, WILLIAM
GAMBARDELLA, BRIAN JOSS, JAMES          CIVIL NO.
KOTTAGE, MATTHEW MARCARELLI,
THOMAS J. MICHAELS, SEAN PATTON,
CHRISTOPHER PARKER, EDWARD
RIORDON, KEVIN ROXBEE, TIMOTHY
SCANLON, BENJAMIN VARGAS,
JOHN VENDETTO AND MARK
VENDETTO
         Plaintiffs,                July 8, 2004

V.

JOHN DESTEFANO, KAREN DUBOIS-
WALTON, THOMAS UDE, JR., TINA
BURGETT, BOISE KIMBER, MALCOLM
WEBER, ZELMA TIRADO AND THE CITY OF
NEW HAVEN,
         Defendants.

## DEMAND FOR JURY TRIAL

The plaintiffs hereby request a trial by jury on all issues.

THE PLAINTIFFS,

BY: _____
Karen Lee Torre (ct#01707)
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, Connecticut 06510
Tel. (203) 865-5541
Fax: (203) 865-4844
Their Attorney

21

LAW OFFICES OF KAREN LEE TORRE • 51 ELM STREET, SUITE 307, NEW HAVEN, CONNECTICUT 06510 • TEL: (203) 865-5541